[Nos. A120940, A122167, A122548. First Dist., Div. Five. Feb. 5, 2010.]

SCHEHEREZADE SHARABIANLOU et al., Plaintiffs and Appellants, v. RONALD M. KARP et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I and III.

1134

COUNSEL

Law Offices Mallette & Libonati, Linda L. Mallette; Berliner Cohen, Thomas P. Murphy and Heather H. Munoz for Plaintiffs and Appellants.

Peterson Martin & Reynolds, P. Kurt Peterson, Ryan L. Werner; Law Offices of Bernard N. Wolf, Bernard N. Wolf and Brian W. Newcomb, for Defendants and Respondents.

OPINION

**NEEDHAM, J.**—These appeals have their origin in a failed real estate transaction. Appellants Farrokh and Scheherezade Sharabianlou offered to purchase a commercial building owned by respondent Berenstein Associates.[1] The Sharabianlous engaged real estate agent Ronald Karp and his company California Realty Investment Company (hereafter the Karps) to represent them in the transaction. Soon after the offer was made, however, the parties learned of environmental contamination on the property. Faced with uncertainty about the scope of the contamination and the cost of its cleanup, and unable to agree on who should pay for the remediation, the parties failed to close escrow on the agreed-upon date.

After further efforts to resuscitate the transaction were unsuccessful, the Sharabianlous sued the Berensteins and the Karps, seeking, among other remedies, rescission of their agreement with the former and tort damages from the latter. The trial court ordered the contract rescinded on equitable grounds and, citing its statutory authority to adjust the equities under Civil Code section 1692, awarded substantial damages to the Berensteins. It later awarded attorney fees to the Berensteins as prevailing parties. It rejected the Sharabianlous' claims against the Karps in their entirety.

The Sharabianlous now challenge the resulting judgment. They first claim it is void because of the trial judge's bias. They also argue that the damages awarded to the Berensteins exceed those legally available in an action seeking relief based upon rescission, and they raise a number of other claims of error concerning the damage award. As to the Karps, the Sharabianlous contend the trial court erred in rejecting their breach of fiduciary duty and professional negligence claims. In the unpublished portions of our opinion we reject the claim of bias and affirm the judgment in favor of the Karps. In the published

---

[1] Respondent Berenstein Associates is a general partnership in which respondents Sid and Burton Berenstein are general partners. Unless the context requires otherwise, we will refer to the Berensteins and the partnership collectively as "the Berensteins."

portion of our opinion, we address the damage award to the Berensteins and conclude it must be reversed.

FACTUAL AND PROCEDURAL BACKGROUND

In the summer of 2002, the Sharabianlous were looking for a new location for their printing business, and they asked Ronald Karp to assist them in finding a suitable building to purchase. In October 2002, they signed a purchase agreement (the Agreement) to buy a building the Berensteins owned on Howard Avenue in Burlingame.[2] The purchase price was $2 million, and upon signing the Agreement, the Sharabianlous deposited $65,000 into escrow at Old Republic Title Company (Old Republic). They later deposited an additional $50,000 into escrow, bringing the total deposit to $115,000.

Initially, the Agreement provided that close of escrow was to occur on February 6, 2003. Over the course of the following months, however, the parties executed a number of addenda extending the date on which escrow was to close. The final addendum set a closing date of June 4, 2003.

The Agreement also contained both environmental and financing contingencies and set deadlines by which these contingencies were to be removed. To finance the transaction, the Sharabianlous applied for a $1.7 million loan through US Bank, and on December 9, 2002, the bank conditionally approved their application subject to certain conditions, one of which was the submission of an acceptable phase I environmental report. On US Bank's recommendation, the Sharabianlous retained Piers Environmental Services (Piers) to conduct a phase I site assessment to determine the possible presence of environmental contamination at the Howard Avenue property. In its October 2002 phase I report, Piers recommended that a phase II investigation be performed, because research revealed that an underground storage tank had been installed on the property in 1946, and the ground floor of the building had been occupied by a dry cleaning business for several decades.

The Sharabianlous and the Berensteins then agreed to extend the deadline for the Sharabianlous' approval of the environmental inspection to December 13, 2002. On December 17, 2002, the parties executed addendum 3 to the Agreement,[3] extending the deadline for removal of the financing contingency to January 10, 2003. This addendum also addressed the removal of the environmental contingency, stating: "Environmental Contingency shall be

---

[2] The Agreement is a standard form commercial property purchase agreement issued by the California Association of Realtors. It bears the form number CPA-11 and a revision date of April 2001.

[3] Ronald Karp initially drafted this addendum, and it was modified by Sid Berenstein.

removed by the [earlier] of the following events: [¶] i) Seller providing to Purchaser a Notice of Clearance from the San Mateo County Environmental Services, or ii) Seller to deposit in escrow, One Hundred and Fifty Percent (150%) of the remedial costs provided in the summary to be prepared by Piers Environmental Services. [¶] Funds deposited in escrow shall be held until Seller provides a notice of clearance from the San Mateo County Environmental Services Department, at which time escrow holder shall release the remaining funds to Seller without further instructions from the Buyer. At Seller's option, the funds held in escrow may be used to pay the approved invoices of Piers Environmental Services, and the balance of the funds shall be released to Seller when Seller provides notice of clearance from the San Mateo County Environmental Services Department without further instructions from the Buyer."[4]

In late December 2002, Piers issued its phase II report, which noted the presence of tetrachloroethene (a dry cleaning solvent), trichloroethene, and other compounds in the subsurface soil at the Howard Avenue property. The report concluded that the subsurface soil had been affected by the property's previous use as a dry cleaning facility, and it recommended further investigation to determine the extent of the contamination.

On January 13, 2003, the parties to the Agreement executed addendum 4, which released the Sharabianlous' financing contingency but gave them the right to cancel the Agreement if the Howard Avenue property appraised for less than $1.7 million. US Bank retained an appraiser, who inspected the property on January 15, 2003. Ronald Karp accompanied the appraiser to the property and provided information on the value of comparable properties. Karp did not tell the appraiser that environmental reports had been prepared for the property, and the two had no discussion of contamination issues. The appraiser valued the property at $2.05 million. The appraisal report noted, however, that "in light of the [property's] previous use as a cleaners, we make no warranties regarding the presence or absence of toxic substances. If a formal certification of these matters is required, we recommend that a properly licensed professional engineer, familiar with the detailed investigative and reporting requirements of Phase I toxic certifications, be consulted." At trial, the appraiser testified that if he had been provided with copies of the environmental reports, he would not have prepared the appraisal until he had received clarification and estimates for the cost of cleanup. Although he stated that contamination would have affected the appraised value, he offered no opinion on the value of the property in light of the contamination.

---

[4] On the day before addendum 3 was signed, Piers had advised that remediation would likely cost $20,000 or more but explained that a more precise cost estimate would only be possible after a caseworker review.

On January 31, 2003, the Sharabianlous removed their financing contingencies and signed an addendum to the agreement stating: "There are no remaining contingencies, the . . . Agreement . . . is contingent free."

In March 2003, Piers sent Ronald Karp a cost estimate for the required remediation work. On May 2, 2003, the San Mateo County Health Services Agency approved the scope of work presented in the Piers plan. On May 27, Piers sent Karp a proposal for monitoring and remediating the contamination at the Howard Avenue property at an estimated cost of $187,180.

Meanwhile, in late April 2003, the parties executed the final addendum to the Agreement, extending close of escrow until June 4, 2003. On that date, the Sharabianlous advised Ronald Karp that the matters discovered in the second phase of the environmental investigation were material, but they indicated they were still negotiating to purchase the building. The Sharabianlous informed Karp that their lender would not fund the loan unless it received an indemnity agreement from the sellers and "approval from the geologist."

Escrow did not close on June 4, and on June 10, Karp advised the Sharabianlous that the Berensteins considered them in default of their obligations under the Agreement. On July 11, 2003, US Bank notified the Sharabianlous that it would not approve their request for financing because of the environmental contamination at the property. Nevertheless, the parties conducted further negotiations, and the Berensteins offered to extend seller financing. Because of the Sharabianlous' continued concern about the contamination, the negotiations were unsuccessful.

In August 2003, the Berensteins reached an agreement to sell the Howard Avenue property for $1,550,000 to a corporation owned by Stanley Lo. That sale closed on March 8, 2004. The Berensteins had planned to use the Howard Avenue property as part of a like-kind exchange under Internal Revenue Code section 1031 (section 1031).[5] They had contracted to purchase a building in Yuba City, California, as a replacement property, but lost the opportunity to buy it because of the failed sale to the Sharabianlous. Instead, the Berensteins bought a building in McKinney, Texas, which generated less rental income than they would have earned from the Yuba City property.

---

[5] Under section 1031, no taxable gain or loss is recognized on the exchange of properties of like kind if both the property surrendered and the property received are held either "for productive use in a trade or business or for investment." (26 U.S.C. § 1031(a)(1).) This section "allows taxpayers with profitable real estate investments to swap them for other real estate without paying tax." (2 Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2009) ¶ 13:305.1, p. 13-58 (rev. # 1, 2009).)

On July 23, 2004, the Sharabianlous filed their original complaint against the Karps and the Berensteins. The Berensteins cross-complained against the Sharabianlous, alleging breach of contract and seeking declaratory relief. On July 27, 2005, the Sharabianlous filed a second amended complaint.

The Sharabianlous sought declaratory relief against the Berensteins and a return of their $115,000 deposit at Old Republic. They included a claim for rescission of the Agreement on the basis of fraud, failure of consideration, mutual mistake of fact, and commercial frustration. In the alternative, the Sharabianlous sought damages for breach of contract. The second amended complaint also included claims against the Karps for breach of fiduciary duty, professional negligence, fraud, and negligent misrepresentation. One of the bases for the breach of fiduciary duty claim was Ronald Karp's failure to disclose the existence of the Piers environmental reports to US Bank's appraiser. The Sharabianlous also claimed that Karp should have referred them to a lawyer during the sale negotiations, but he failed to do so. The Sharabianlous' cause of action for professional negligence was based in part on their claim that Ronald Karp's drafting of addendum 3 had left that document ambiguous.

The matter was tried to the court, and at the close of the proceedings, the court issued separate statements of decision as to the Karps and the Berensteins. As relevant here, the trial court found no breach of the Agreement by either the Berensteins or the Sharabianlous, because neither party knew the full extent of the environmental hazard at the Howard Avenue property. It therefore concluded that equitable rescission was the appropriate remedy. The court found "that the purpose of rescission is to restore the parties to the former position as far as possible to bring about substantial justice by adjusting the equities." It noted that in adjusting the equities, it could award compensation to a party. The trial court chose to adjust the equities in favor of the Berensteins because it found they had acted far more reasonably than the Sharabianlous when the parties were attempting to negotiate the sale and because, unlike the Sharabianlous, they had acted to mitigate their losses.

The trial court awarded the Berensteins $332,000 as the "net difference in sales price (i.e. the difference in sales price between the sale price to the Sharabianlous and the lower price paid by Stanley Lo) . . . ." It also awarded the Berensteins $96,660 as "present value loss" due to the difference in rental income expected from the McKinney, Texas property and the Yuba City property the Berensteins had lost the opportunity to buy. The total of these damages was $428,660, to which the trial court added prejudgment interest at 10 percent from June 3, 2003, the day prior to the scheduled close of escrow.

The trial court offset these damages by $42,000, an amount representing the difference between the $78,500 in expenses the Sharabianlous incurred, on the one hand, and the $36,000 in lost rent the Berensteins claimed, on the other, together with 10 percent prejudgment interest on this difference. The trial court also found that both parties had incurred "out-of-pocket expenses, such as environmental reports, appraisals, and financing fees . . . in the range of $27,000 each," and concluded that, since the expenses were roughly equal, they required no adjustment. The trial court found the Berensteins were the prevailing party and were entitled to recover attorney fees pursuant to the Agreement. (See Civ. Code, § 1717, subd. (a).) The court ordered Old Republic to return the $115,000 deposit to the Sharabianlous, together with interest on that amount.

The trial court found that the Karps had not breached any fiduciary duty to the Sharabianlous. It found that Ronald Karp's failure to disclose the existence of the Piers environmental reports to US Bank's appraiser did not breach any fiduciary duty, because the Sharabianlous and their lender already knew that the extent of the contamination and the potential costs of remediation were uncertain. The court noted that the Agreement specifically advised the parties to seek expert advice regarding the possible presence of hazardous substances, and it disclaimed any duty by the Karps to provide any advice or information exceeding that needed to obtain a real estate license. The trial court also rejected the professional negligence claim, finding that the Agreement and its addenda were "both objectively straightforward and in fact were subjectively understood by plaintiffs." As a consequence, the court found there was no basis to conclude the Karps breached any duty to draft an unambiguous contract. It further found that the Sharabianlous were well-educated, sophisticated individuals with significant experience in commercial real estate transactions who were capable of determining for themselves whether they should seek legal advice. It therefore ordered judgment to be entered in favor of the Karps.

On January 24, 2008, the trial court entered a judgment that specified its damage awards and granted the Berensteins attorney fees in an amount to be determined. The trial court later issued an order awarding the Berensteins fees of $291,269.25. On July 16, 2008, the trial court filed an amended judgment nunc pro tunc, in which it awarded a total of $890,361.96 to the Berensteins.

The Sharabianlous filed timely appeals from both the original judgment and the order awarding attorney fees.

Discussion

In the unpublished part I of this opinion, we address the Sharabianlous' contention that the trial judge's bias renders the entire judgment void. In the published part II, we turn to their claims of error regarding the damages and attorney fees awarded to the Berensteins. In the unpublished part III of our opinion, we analyze the Sharabianlous' breach of fiduciary duty and professional negligence claims against the Karps.

I.  *Judicial Bias.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II.  *The Berensteins*

The Sharabianlous make a number of challenges to the damages the trial court awarded to the Berensteins. We will address these in the order in which they are presented in appellants' opening brief. Appellants' principal claim is that certain items of recovery awarded as rescission damages are not legally permissible under Civil Code section 1692.[12] Specifically, appellants object to (1) the $332,000 awarded as the net difference between the Agreement's sales price and the price paid by Lo and (2) the $96,660 awarded as the difference between the Berensteins' income from the McKinney, Texas property and the higher income the Berensteins would have received from the Yuba City, California property they lost the opportunity to buy. Appellants argue that these items of recovery essentially amount to an award of damages for breach of the Agreement, rather than for its rescission. That is, the damages compensated the Berensteins based on what they would have gained had the Agreement been fully performed. According to the Sharabianlous, these

---

[*] See footnote, *ante*, page 1133.

[12] The Berensteins claim the Sharabianlous forfeited these arguments by failing to raise them in their objections to the proposed statement of decision. To the contrary, the record reflects that appellants challenged the contested items of recovery on the basis that the damages would do more than restore the Berensteins to the economic position they occupied prior to the signing of the Agreement. While the phrasing of the arguments on appeal may be slightly different, their substance is the same. The Berensteins also assert that the Sharabianlous may not raise these arguments in this court because they invited the error by seeking similar damages in the trial court. The Sharabianlous acknowledge in their reply brief that at least one item of damages they sought—"$78,000 in increased rent paid"—might be characterized as compensation for loss based on full performance of the contract. Nevertheless, in light of the Sharabianlous' clear objections to inclusion of these damages in the trial court's proposed statement of decision, we find the invited error doctrine inapplicable, because the Sharabianlous "simply did not mislead the superior court in any way." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [87 Cal.Rptr.2d 453, 981 P.2d 79].)

damages do more than restore the Berensteins to the status quo ante, and thus are not proper restitutionary or "consequential damages" under Civil Code section 1692. We agree with appellants.

### A. Relief Available Under Civil Code Section 1692

Civil Code section 1692 provides in relevant part: "A claim for damages is not inconsistent with a claim for relief based upon rescission. The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled; but such relief shall not include duplicate or inconsistent items of recovery. [¶] If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties." The Sharabianlous contend the challenged items of recovery are not the type of damages authorized by this section. Analysis of this argument requires us to examine the nature of the relief available under this provision.

■ The statute essentially "restates the equity jurisprudence applicable in the rescission context." (*Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1422 [49 Cal.Rptr.2d 191].) The fundamental principle underlying that jurisprudence "is that 'in such actions the court should do complete equity between the parties' and to that end 'may grant any monetary relief necessary' to do so. [Citation.]" (*Runyan v. Pacific Air Industries, Inc.* (1970) 2 Cal.3d 304, 316 [85 Cal.Rptr. 138, 466 P.2d 682] (*Runyan*).) Rescission is intended to restore the parties as nearly as possible to their former positions and " 'to bring about substantial justice by adjusting the equities between the parties' despite the fact that 'the status quo cannot be exactly reproduced.' " (*Ibid.*, quoting *Lobdell v. Miller* (1952) 114 Cal.App.2d 328, 344 [250 P.2d 357].) To achieve this objective, Civil Code section 1692 provides that "[a] claim for damages is not inconsistent with a claim for relief based upon rescission." It further provides that the aggrieved party shall be awarded "complete relief," including restitution and "consequential damages." (Civ. Code, § 1692.)

■ The claim authorized by Civil Code section 1692 is one " 'based upon . . . rescission' or the disaffirmance of the contract. The statute does not authorize a claim based upon the affirmance of the contract." (*Akin v. Certain Underwriters at Lloyd's London* (2006) 140 Cal.App.4th 291, 297 [44 Cal.Rptr.3d 284] (*Akin*).) The distinction between disaffirmance and affirmance of the contract has important consequences when it comes to damages. A party who sues for breach of contract thereby affirms the contract's existence, and the damages awarded "compensate[] the party not in default

for the loss of his 'expectational interest'—the benefit of his bargain which full performance would have brought." (*Runyan, supra,* 2 Cal.3d at p. 316, fn. 15.) In contrast, rescission is a remedy that *disaffirms* the contract. (*Akin,* at p. 296; see also *Lobdell v. Miller, supra,* 114 Cal.App.2d at p. 343 ["The remedy of rescission necessarily involves a repudiation of the contract."].) Rescission extinguishes the contract (Civ. Code, § 1688), terminates further liability, and restores the parties to their former positions by requiring them to return whatever consideration they have received. (*Nmsbpcsldhb v. County of Fresno* (2007) 152 Cal.App.4th 954, 959–960 [61 Cal.Rptr.3d 425].) Thus, the "[r]elief given in rescission cases—restitution and in some cases consequential damages—puts the rescinding party in the *status quo ante,* returning him to his economic position before he entered the contract." (*Runyan, supra,* at p. 316, fn. 15.)

██ The damages available in cases of rescission depend in part on the reasons for which the contract was rescinded. (See *Runyan, supra,* 2 Cal.3d at p. 317 & fn. 16.) In this case, the trial court rescinded the Agreement based on mutual mistake of fact, because "neither party knew the full extent of the environmental hazard at the property . . . ." (See Civ. Code, § 1689, subd. (b)(1) [contract may be rescinded "[i]f the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake . . . ."].) Rescission is an appropriate remedy where, as here, the contracting parties are mutually mistaken as to the condition of real property. (E.g., *Williams v. Puccinelli* (1965) 236 Cal.App.2d 512, 515–516 [46 Cal.Rptr. 285] [lease of premises for operation of restaurant and bar properly rescinded after discovery that structure lacked sufficient load-bearing capacity].) As our Supreme Court pointed out in *Runyan,* however, the damages available in actions for rescission based upon the fault of the nonrescinding party (such as cases of fraud or misrepresentation) and those not involving fault (such as cases of illegality or mistake) are different. (*Runyan, supra,* 2 Cal.3d at p. 317.) *Runyan* observed that courts have not awarded consequential damages when rescission is sought based upon mistake. (*Ibid.*) " 'Rescission for mistake . . . is a remedy by means of which a party may be relieved of the burdens and may procure restitutionary redress respecting a contract which was defective at its inception because consent was not freely or knowingly given.' " (*Id.* at pp. 317–318, fn. 16, quoting Recommendation and Study Relating to Rescission of Contracts (1960) 3 Cal. Law Revision Com. Rep. (1961) p. D-15, fn. 1.) *Runyan* therefore indicates that the damages available to parties in cases in which rescission is based upon mistake are more limited than those available in cases in which rescission is based upon fault.

██ In cases involving the rescission of agreements to purchase real property, California courts have held that the seller must refund all payments received in connection with the sale. (See *Kent v. Clark* (1942) 20 Cal.2d 779,

784 [128 P.2d 868].) If the buyer has taken possession of the property, the buyer must restore possession to the seller. (*Ibid.*) Such recovery of the consideration exchanged is part of restitution. (See 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 937, p. 1031; *Millar v. James* (1967) 254 Cal.App.2d 530, 531, 532 [62 Cal.Rptr. 335].) As consequential damages, rescinding buyers or sellers may recover such items as real estate commissions paid in connection with the sale (*Tampico v. Wood* (1963) 222 Cal.App.2d 211, 214–215 [34 Cal.Rptr. 885]), escrow expenses (*Curran v. Heslop* (1953) 115 Cal.App.2d 476, 483 [252 P.2d 378]), interest on specific sums of money paid to the other party (*Smith v. Rickards* (1957) 149 Cal.App.2d 648, 654 [308 P.2d 758]), and attorney fees in appropriate cases (*Hastings v. Matlock* (1985) 171 Cal.App.3d 826, 841 [217 Cal.Rptr. 856]).

### B. *The Trial Court's Award Gave the Berensteins the "Benefit of the Bargain."*

■ The trial court's award of $428,660 goes well beyond the types of damages permitted in the aforementioned cases. The court's award was calculated based upon the difference between the rescinded contract's sale price and the amount received from the later sale to Stanley Lo. To this the trial court added the difference between the income the Berensteins would have earned from the Yuba City property and the amount they earned from the Texas property. The damages thus effectively gave the Berensteins the benefits they would have gained if the rescinded contract had been fully performed. As such, the trial court compensated the Berensteins "for the loss of [their] 'expectational interest'—the benefit of [the] bargain which full performance would have brought." (*Runyan, supra,* 2 Cal.3d at p. 316, fn. 15; see also *Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 564 [29 Cal.Rptr.2d 463] ["The 'benefit of the bargain' measure of damages is the difference between the actual value of what the plaintiff has received and that which he expected to receive."].) Such damages are not available in an action under Civil Code section 1692.[13] (*Akin, supra,* 140 Cal.App.4th at pp. 297–298.) The statute precludes " 'duplicate or inconsistent items of recovery,' " and damages for breach of contract are inconsistent with rescission. (*Paularena v. Superior Court* (1965) 231 Cal.App.2d 906, 915 [42 Cal.Rptr. 366].)

■ The Berensteins have not cited any case, from California or elsewhere, in which a court rescinding a contract based on mistake has approved

---

[13] Our conclusion is strengthened when one observes that the trial court's method of calculating the Berensteins' damages resembles somewhat the measure of recovery available in actions for breach of an agreement to purchase real estate. (See Civ. Code, § 3307.) In such cases, "[i]f the purchaser defaults, the vendor may recover for the loss of his or her bargain and consequential damages." (1 Witkin, Summary of Cal. Law, *supra,* Contracts, § 901, p. 994.)

the measure of recovery used here. They do not specifically claim that these items constitute either restitution or consequential damages under the statute. Instead, they argue that the trial court was authorized to award them as part of its statutory authority to adjust the equities after granting the remedy of rescission. It is true that case law recognizes the trial court's broad power to fashion an appropriate remedy in cases of rescission. (See, e.g., *Snelson v. Ondulando Highlands Corp.* (1970) 5 Cal.App.3d 243, 254 & fn. 3, 258 [84 Cal.Rptr. 800] [affirming judgment ordering sellers to assume payments on note and to hold defrauded buyers harmless for any demands or claims by lender based on note and trust deed].) But the trial court's authority to adjust the equities is one that must be exercised in accordance with established principles of law and equity. (*Utemark v. Samuel* (1953) 118 Cal.App.2d 313, 316 [257 P.2d 656].) As we explain, the damage award before us does not adhere to those principles.[14]

■ The very definition of rescission is "to 'restore the parties to their former position.' [Citation.]" (*Nmsbpcsldhb v. County of Fresno, supra*, 152 Cal.App.4th at p. 959; accord, *McCoy v. West* (1977) 70 Cal.App.3d 295, 302 [138 Cal.Rptr. 660].) Had the Sharabianlous taken possession of the premises, restoring the Berensteins to their former position would have meant returning their property to them. (See *Goodrich v. Lathrop* (1892) 94 Cal. 56, 58 [29 P. 329] [the words "same position" in Civ. Code, former § 3407 (enacted by Stats. 1872 and repealed by Stats. 1961, ch. 589, § 5, p. 1735) refer to the subject matter of the contract, i.e., the property; vendor restored to status quo ante by return of property].) Since the Berensteins never parted with the property, there was nothing physically to restore. Moreover, restoring the Berensteins to their former position does *not* mean compensating them for the difference in the price offered by the Sharabianlous and the price later paid by Lo. (See *Goodrich v. Lathrop*, at p. 58.) "If the property can be returned by the vendee in substantially the same condition as when he received it, then the requirements of . . . the code are fully satisfied." (*Ibid.*) In any event, whether the Berensteins accepted a lower price from Lo because of the discovery of contamination beneath the property or for some other reason, it is clear that the reason is not attributable to the Sharabianlous. (*Shirreffs v. Alta Canyada Corp.* (1935) 8 Cal.App.2d 742, 754–755 [48 P.2d 55].) Nor can the money awarded be characterized as the kind of expenses necessarily incurred in connection with the sale that have traditionally qualified as "consequential damages," such as real estate commissions, escrow fees, or interest. In short, these items of recovery do not fall

---

[14] The trial court's finding that the Berensteins had acted more reasonably than the Sharabianlous also cannot serve to justify the award. The court found that neither party was in breach, and therefore this cannot be construed as a case of "rescission based upon a ground involving some fault on the part of the nonrescinding party . . . ." (*Runyan, supra*, 2 Cal.3d at p. 317.)

within the types of damages California courts have found to be proper elements of relief based upon rescission.

██ The trial court's award of damages to the Berensteins did not merely restore them to the status quo ante. It placed them in a better position by giving them the benefits they would have obtained had the rescinded contract been performed. For this reason, the award of $428,660 was not legally permissible under Civil Code section 1692 and must be reversed.[15] It follows that we also reverse the award of prejudgment interest on this amount.

## C. The Setoff for "Out-of-pocket Expenses"

In its statement of decision, the trial court noted that "[b]oth Plaintiffs Sharabianlou and Defendants Berensteins have out-of-pocket expenses, such as environmental reports, appraisals, and financing fees, etc.; each side having so spent in the range of $27,000 each." The court found that these expenses were roughly equal and required no adjustment. The Sharabianlous contend the award is legally unavailable because the costs of the environmental report benefitted the Berensteins, and, as they did below, they further assert that there is no evidence to justify the amount awarded. We agree in part with appellants.

We reject the Sharabianlous' argument that a setoff for the cost of the environmental reports is legally unavailable to the Berensteins. We cannot accept the contention that the reports benefitted the Berensteins alone. Both parties to the transaction could be said to have benefitted from the discovery and investigation of the contamination on the property. Indeed, but for the environmental investigation, the Sharabianlous might have purchased a piece of contaminated property. We are therefore unwilling to hold as a matter of law that the trial court did not act "reasonably and equitably" in crediting this expense to the Berensteins. (See *Runyan, supra*, 2 Cal.3d at p. 318.)

---

[15] Because we reverse the trial court's award of these damages, we need not resolve any contentions regarding the liquidated damages provision of the Agreement. On this point, the Sharabianlous state in their opening brief that their entitlement to return of their entire $115,000 deposit is undisputed, and the Berensteins do not argue otherwise.

The Berensteins make no claim that they should be permitted to retain the $65,000 initial deposit as liquidated damages in the event that the trial court's award to them is reversed. To the contrary, the Berensteins argue that the liquidated damages provision is inapplicable here because such provisions apply only in cases of breach of contract, and the trial court found no breach. (See Civ. Code, § 1671, subd. (b).)

Similarly, we do not reach the question of whether the award of $96,660 in lost rental income is supported by section 1031. (See 26 U.S.C. § 1031.) The Berensteins point out that the trial court did not justify the award on this basis, and they make no attempt to do so, either. We have already concluded that the trial court erred in awarding this sum on the grounds it articulated in its statement of decision, and in the absence of any argument by the Berensteins that the award is justified on any other ground, we need not consider the matter further.

■ We agree with the Sharabianlous, however, that the evidence is insufficient to support a setoff of $27,000 to the Berensteins. In response to appellants' challenge to the sufficiency of the evidence to support the amount, the Berensteins point us only to testimony by Sid Berenstein in which he stated the Berensteins had paid $4,300 as their share of the cost of the Piers phase II report. They offer no other evidentiary support for the $27,000 figure used by the trial court. The Berensteins' factual assertions on appeal cannot rest solely on the figure appearing in the trial court's decision. (See *Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379 [122 Cal.Rptr.2d 204].) "It is the evidence supporting or opposing the trial court's decision that is important." (*Ibid.*) Counsel is obligated to refer us to the portions of the record supporting his or her contentions on appeal. (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738 [69 Cal.Rptr.3d 365]; see also Cal. Rules of Court, rule 8.204(a)(1)(C) ["Each brief must: [¶] . . . [¶] . . . Support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."].) We may disregard a respondent's statements of fact when those statements are unsupported by citations to the record. (E.g., *Gotschall v. Daley* (2002) 96 Cal.App.4th 479, 481, fn. 1 [116 Cal.Rptr.2d 882].) And we will not scour the record on our own in search of supporting evidence. (See *Grant-Burton v. Covenant Care, Inc.*, at p. 1379.) Where, as here, respondents have failed to cite that evidence, they cannot complain when we find their arguments unpersuasive. (See *Lankster v. Alpha Beta Co.* (1993) 15 Cal.App.4th 678, 684 [18 Cal.Rptr.2d 923].)

### D. *Appellants' Claim for Expenses Incurred in Reliance on the Agreement*

The Sharabianlous next contend the trial court erred in failing to award them certain costs they allegedly incurred in reliance on the Howard sale. They identify certain of these expenses in their opening brief, including a $23,448.36 prepayment penalty they suffered in the sale of property they owned on Broadway Avenue, as well as "other expenses incurred in connection with the Broadway sale, such as commissions." The precise nature and amount of the "other expenses" are not explained.

■ We are unable to evaluate appellants' contentions because they are not supported by either sufficient argument or adequate citations to the record. (See Cal. Rules of Court, rule 8.204(a)(1)(B), (C).) The trial court denied the Sharabianlous the $23,448.36 prepayment penalty because it found they could have used other properties to complete a timely section 1031 exchange but failed to do so. The Sharabianlous' opening brief does not

dispute this finding. Indeed, it does not even mention it. Absent some argument that the trial court's conclusion was erroneous, we will not reverse its decision on this point. (See, e.g., *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631–632 [80 Cal.Rptr.2d 378] [trial court's ruling is presumed correct and burden is on appellant to demonstrate error].)

As for the "other expenses incurred in connection with the Broadway sale, such as commissions," appellants do not tell us the amount they believe they should have been awarded. Their brief contains only a cryptic reference to a trial exhibit. The exhibit is a seller's final settlement statement for the property at 1220–1226 Broadway, and it lists commission charges of $159,488.10. In their briefs on damages in the court below, appellants claimed almost exactly half this amount, or $79,744, as the "[r]eal estate commission on sale of Broadway . . . ." But in their objections to the proposed statement of decision regarding the Berensteins, the Sharabianlous claimed they should be awarded the sum of $149,408.11, which allegedly represented "refinancing costs, prepayment penalties, real estate commission on the sale of Broadway, and closing costs spent in reliance upon their contract to purchase Howard Avenue." Their briefs to this court do not reconcile these various figures, and it is not this court's responsibility to do so on its own. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 [50 Cal.Rptr.3d 398] ["One cannot simply say the court erred, and leave it up to the appellate court to figure out why."].) We therefore conclude the Sharabianlous have failed to demonstrate error.

### E. *Appellate Remedy*

Now that we have determined the merits of the parties' contentions on appeal, the question of the proper appellate remedy remains. The Sharabianlous suggest that we should "modify the judgment so as to strike the monetary award to Berenstein along with the prejudgment interest award to Berenstein and remand the matter to the trial court for a determination of the additional recovery to . . . the Sharabianlous based on their expenses incurred in reliance on the Agreement." Although we agree that the awards to the Berensteins must be reversed, we have determined that the Sharabianlous failed to demonstrate that they were entitled to additional recovery of expenses based on the Agreement. The Sharabianlous had a full and fair opportunity to litigate this issue, and we therefore conclude that it need not be retried. (See *Baxter v. Peterson* (2007) 150 Cal.App.4th 673, 681 [58 Cal.Rptr.3d 686].)

For their part, the Berensteins have argued only that the trial court's award was correct and that they are entitled to unqualified affirmance of the

judgment. They have not proposed any alternative measure of their damages and have not identified any items of damage that might be owed to them if the trial court's award is reversed. Nor have the Berensteins challenged any aspect of the trial court's award of damages to the Sharabianlous. Thus, we conclude that there is no need for a retrial of the damages issues and will therefore affirm the portion of the judgment awarding the Sharabianlous $61,423.82 in damages from the Berensteins, as well as the portion ordering the return of their $115,000 deposit at Old Republic together with interest thereon.

■■■ Because we reverse the award of damages to the Berensteins, we must also reverse the portion of the judgment awarding them attorney fees. That award was based on the determination that the Berensteins were the prevailing parties in an action on the Agreement (Civ. Code, § 1717, subd. (a)), and having set aside the damage award, we must set aside the fee award as well. (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1053 [55 Cal.Rptr.3d 158].) The Sharabianlous argue that if the judgment in favor of the Berensteins is reversed, they are necessarily the prevailing parties and are entitled to an award of attorney fees. "The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' [Citation.]" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876 [39 Cal.Rptr.2d 824, 891 P.2d 804].) We therefore decline to make that determination ourselves and instead leave it to the trial court on remand.

III. *The Karps**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The portion of the judgment awarding damages, prejudgment interest, and attorney fees to the Berensteins is reversed. The portion of the judgment awarding damages to the Sharabianlous is affirmed. The judgment in favor of the Karps is affirmed. The matter is remanded to the trial court for both a

---

*See footnote, *ante,* page 1133.

redetermination of who is the prevailing party in light of our decision and of the amount of attorney fees. The Karps shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).) The Sharabianlous and the Berensteins shall each bear their own costs. (Cal. Rules of Court, rule 8.278(a)(3).)

Jones, P. J., and Bruiniers, J., concurred.

A petition for a rehearing was denied March 3, 2010, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied May 12, 2010, S180968.