Filed 4/13/26  955-57th v. City of Oakland CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| 955-57TH, LLC,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF OAKLAND,<br><br>    Defendant and Respondent. | A172051<br><br>(Alameda County Super. Ct. Nos. 22CV006151 and 23CV044263) |

The City of Oakland declared a public nuisance as to property in Oakland owned by 955-57th, LLC, on which Suprema Meats operates a meat distribution business.  The nuisance declaration was based on "excessive early morning noise and unpermitted obstructions of the public right of way." (We will refer to 955-57th, LLC, and Suprema Meats as Suprema.)  Suprema filed an administrative appeal challenging the nuisance declaration, and, in 2021, a hearing officer affirmed the "determination that the activities at the [property] constitute a public nuisance" and directed the City to offer Suprema "a proposed compliance plan providing specific conditions under which . . . Suprema's current use of the [property] can lawfully continue."  The City proposed a compliance plan, issued an Amended Notice of Public Nuisance, and issued a notice of violations.  Suprema filed another

1

administrative appeal, and, in 2023, a hearing officer found that "[p]enalties [were] warranted and were properly assessed for failure to adhere to the compliance plan." Challenging both decisions, Suprema petitioned for writs of administrative mandate, and the trial court denied both petitions. On appeal, Suprema contends that the hearing decisions in 2021 and 2023 were abuses of discretion. We affirm.

## BACKGROUND

The 2021 Decision

In 2020, the City issued a 30-day notice to abate in which it declared that Suprema's property was a public nuisance, declared that Suprema's "nuisance activity includes . . . excessive early morning noise and unpermitted obstructions of the public right of way," and ordered Suprema to immediately cease and desist the nuisance activity. Suprema filed an administrative appeal.

At a two-day hearing in 2021, four witnesses who lived on 57th Street and one witness who lived within blocks of Suprema testified. One witness testified that she starts to hear noise from Suprema's operations inside of her home starting at 3:00 or 3:30 in the morning. Another witness testified: "[T]he noise on a daily basis starts at 4:00 a.m. every morning, and it's a clanging of the gates, trucks moving in and out and beeping and people yelling, which often wakes us up." Another witness testified that the noise was "constant, disruptive, startling, [and] disturbing" "six days a week, Sunday through Friday, 10 to 12 hours per day for much of the day, if not literally the majority of the day."

Another witness, who has lived four houses away from Suprema since 2001, testified: "The company has just grown so much since I first moved to the neighborhood. . . . [T]he number of big rigs, the Suprema fleet, everything

has grown and increased exponentially. . . . [P]roducts are . . . loaded and unloaded on the middle of the street, [and] we can't get through." She testified that "after 2013, . . . it just has been getting exponentially worse in terms of . . . public right-of-way safety and access for pedestrians and for internal traffic," "forklifts are zipping up and down even longer stretches of Lowell Street," and they "have to either avoid Lowell Street altogether" or "[i]f we're going to use Lowell Street during the day, [they] have to take our life in our own hands, essentially."

A municipal code enforcement officer for the City testified about his visits to Suprema five times in February, April, and June 2020 to investigate Suprema's operations and his report about his observations. He testified about his use of a device to acquire decibel readings and "incredible" noise "at around 4:19 in the morning," when "the heavy-duty diesel trucks started to fire up," which "you could actually feel . . . vibrate across the street." He also testified that he found obstructions of the public right of way.

Suprema presented two witnesses. An expert in acoustics testified that the municipal code enforcement officer's data and report were "unreliable" and that he was "not qualified to do the work that he did in terms of evaluating noise."

Miguel Jara, the managing member of 955-57th, LLC, and the president of Suprema Meats, testified that, prior to entering into an earlier compliance plan with the City in 2014, most of Suprema's meat was unloaded on 57th Street. Jara testified that, after entering into the compliance plan, Suprema was not able to unload meat on 57th Street and instead used Lowell Street. As a result, in 2015, 1,200 trucks were unloaded on Lowell Street.

The parties submitted post-hearing briefs, which the hearing officer considered before issuing an 11-page decision finding "overwhelming evidence

3

in the record supporting City's determination that noise levels at Suprema's facility . . . constitutes a public nuisance, in that sounds emanating from the [property] regularly interfere with the daily lives of the residents of the neighboring homes, as described in great detail by the witnesses during the hearing." The hearing officer also found that "trucks owned by Suprema, and those of its vendors, regularly obstruct traffic" and "large trucks regularly block entire lanes of traffic and the sidewalk, obstruct sightlines, and generally block the public right of way." The hearing officer affirmed the City's "determination that the activities at the [property] constitute a public nuisance."

The hearing officer directed the City to offer Suprema "a proposed compliance plan providing specific conditions under which . . . Suprema's current use of the Subject Property can lawfully continue" by "[setting] forth clear and reasonable noise and hours of operations restrictions" and "clear and reasonable guidelines for . . . Suprema to follow in order to preserve the public right of way." The hearing officer gave Suprema 30 days to meet and confer with the City regarding the proposed compliance plan but gave the City "final discretion as to which terms shall be included in any compliance plan." The hearing officer required the City to serve Suprema with an amended notice prior to the imposition of daily fines by the City.

The 2023 Decision

The City proposed a compliance plan in November 2021, but the parties were not able to agree on its terms. In March 2022, the City issued an Amended Notice of Public Nuisance requiring in Section II, subdivision A, that Suprema "comply with the City of Oakland's current noise ordinances, Oakland Municipal Code (OMC) 17.120.050 and OMC 8.18" and requiring in Section III, subdivision A, that Suprema "[c]omply with City of Oakland's

4

restrictions against blocking the public right of way prescribed by Oakland Municipal Code Chapters 1.08, 10, and 12."

In August 2022, the City issued a notice of compliance plan violations. The notice included a table listing violations identified by the City's staff, a table listing violations identified by neighbors, and a total amount of penalties as of the date of the notice of $115,000. Violations included, among other things, "[f]ailure to comply with City of Oakland's noise ordinances during business operation," in violation of Oakland Municipal Code sections 1.08020(A)(2), 8.18.010(A), and 8.18.010(C), and failure to comply with Section III, subdivision A, of the Amended Notice of Public Nuisance by loading or unloading trucks on Lowell Street and parking on sidewalks on Lowell Street. Suprema filed another administrative appeal.

At a two-day hearing before a different hearing officer in 2023, six witnesses who lived on 57th Street testified for the City. Suprema did not present any witnesses. The hearing officer admitted over 90 exhibits, including numerous photographs and multiple videos.

After the hearing, the parties submitted briefs, and the hearing officer issued an 18-page decision finding that "[t]he evidence . . . reveals that [Suprema's] business operation and practices creates noise that is excessive, annoying, and interfering with the community's enjoyment of property, and therefore is a public nuisance pursuant to [Oakland Municipal Code] § 8.10.010." The hearing officer found that "substantial evidence was produced to support the City's determination that vehicles belonging to Suprema and its vendors regularly block the walkways and the public right of way." The hearing officer concluded that "[p]enalties [were] warranted and were properly assessed for failure to adhere to the compliance plan."

Challenging both decisions, Suprema petitioned for writs of administrative mandate.  The trial court related the two petitions and held a consolidated merits proceeding on both petitions.  In a comprehensive 27-page order, the trial court denied both petitions.

Suprema appealed.

## DISCUSSION

On appeal, Suprema contends on three grounds that the hearing decisions in 2021 and 2023 were "abuses of discretion."

We observe at the outset that nowhere in its 13-page opening brief does Suprema state the standard of review, an essential element of an appellant's brief.  (See *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465 ["[f]ailure to acknowledge the proper scope of review is a concession of a lack of merit"].)  Nor does Suprema set forth, let alone summarize, the material evidence, in disregard of the principle that an appellant "challenging the sufficiency of the evidence has the burden to set forth all the material evidence on the point."  (See *Oakland Bulk & Oversized Terminal, LLC* v. *City of Oakland* (2025) 112 Cal.App.5th 519, 544 (*Oakland Bulk*).)  Nor does it acknowledge the principle that an "agency's findings are presumed to be supported by the administrative record."  (See *Donley v. Davi* (2009) 180 Cal.App.4th 447, 456 (*Donley*).)  As we discuss below, this will have significant consequences for Suprema's appeal.

Relevant Law

Code of Civil Procedure section 1094.5 governs judicial review by administrative mandate of a final decision or order rendered by an administrative agency.  (*Christensen v. Lightbourne* (2017) 15 Cal.App.5th 1239, 1251, affd. (2019) 7 Cal.5th 761.)  "To prevail, a petitioner seeking a writ of administrative mandate must show the agency . . . (1) acted without,

6

or in excess of, its jurisdiction; (2) deprived the petitioner of a fair administrative hearing; or (3) committed a prejudicial abuse of discretion. (§ 1094.5, subd. (b); [citation].)" (*Doe v. Regents of University of California* (2021) 70 Cal.App.5th 521, 532 (*Regents*).) "Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b); *Regents,* 70 Cal.App.5th at p. 532.) We review questions of law de novo. (*City of Fontana v. California Dept. of Tax & Fee* Administration (2017) 17 Cal.App.5th 899, 916 (*Fontana*) ["Should a question of law or statutory construction be presented, we would exercise our independent review"].)

When an administrative decision does not involve a fundamental vested right, the trial court reviews the record to determine whether the findings and decision are supported by substantial evidence, and we in turn review the agency's decision, not the trial court's, using the same substantial evidence standard (*Regents*, *supra*, 70 Cal.App.5th at pp. 532-533) in "light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c).) In reviewing the administrative record to determine whether substantial evidence supports the agency's decisions, we "resolv[e] all conflicts in the evidence and draw[] all inferences in support of the [agency's] findings. [Citation.]" (*Clary v. City of Crescent City* (2017) 11 Cal.App.5th 274, 285 (*Clary*).) " ' "Courts may reverse an agency's decision only if, based on the evidence before the agency, a reasonable person could not reach the conclusion reached by the agency." [Citation.]' " (*Fontana*, *supra*, 17 Cal.App.5th at p. 919, italics omitted.)

Suprema Forfeited Its Argument about Applicable Noise Ordinances

Suprema's first argument is headed: "The 2021 and 2023 hearing decisions disregarded applicable noise ordinances causing unlawful and

subjective standards to be applied to Suprema's activities." (Capitalization omitted.) In its reply brief, Suprema clarifies that it "do[es] not contend that the City cannot state what constitutes a nuisance," or "that the City's ordinances are unconstitutional on their face," or "that the City cannot cite Suprema for violations thereof." Even with that clarification, Suprema's argument is difficult to follow. As best we understand it, Suprema's argument is that the hearing decisions in 2021 and 2023 were "abuse[s] of discretion" because they erroneously and unlawfully interpreted the Oakland Municipal Code by solely applying the "subjective standards" of Oakland Municipal Code Chapter 1.08 and disregarding "appropriate decibel level ordinances" that it calls "objective and specific." It is not until the reply brief that Suprema even identifies what it calls a "specific noise level ordinance[]," and then only in passing by citing it (Oakland Municipal Code section 17.120.050).

In its opening brief on appeal, reciting general principles of statutory construction and citing, without discussion, *People v. Shabazz* (2006) 38 Cal.4th 55, Suprema contends that an "interpretation that renders related provisions nugatory must be avoided." True enough. But Suprema then summarily concludes that "[t]he sole application of Chapter 1.08, while treating the more specific ordinances as nugatory, flies in the face of lawful statutory interpretation." This is not a cogent legal argument. In a cursory discussion spanning a little over two pages, Suprema describes, without close textual analysis, the Oakland Municipal Code without discussing or describing the decisions of the hearing officers in any meaningful way. Suprema does not cite any authority for the proposition that an agency errs by applying a more general provision when a more objective or specific provision is also applicable. Moreover, as the City pointed out in its brief on

8

appeal, the City is not aware of any legal authority to support Suprema's argument that a nuisance violation "requires a particular decibel level." Neither are we. In the absence of cogent legal argument supported by citations to authority, we may deem a contention forfeited, and we do so here as to Suprema's first argument. (See *People v. Oyler* (2025) 17 Cal.5th 756, 844, fn. 42 (*Oyler*) ["[Appellant] does not develop this argument or support it with citations to authority. We therefore deem it forfeited"]; *Clary, supra,* 11 Cal.App.5th at p. 294 [" ' "This court is not required to discuss or consider points . . . which are not supported by citation to authorities . . . ." ' [Citations.] . . . [Appellant] has forfeited the issue"].)

Suprema Forfeited Its Argument about Vehicle Noise

Suprema's second argument is entitled: "The California Vehicle Code applies to all vehicular noise, and relevant vehicle noise has been unlawfully determined." (Capitalization omitted.) As best we understand it, Suprema's second argument is that the hearing officers' decisions in 2021 and 2023 were "abuse[s] of discretion" because they unlawfully "took vehicular noise into account" in applying the Oakland Municipal Code to vehicle noise rather than the Vehicle Code, which Suprema asserts applies to all vehicle noise, establishes an 80 dBA noise limit for vehicles over 6,000 pounds under section 27204, and requires measurement from at least 50 feet away under section 27207.

In its opening brief on appeal, it is unclear what legal principle Suprema is invoking to traverse the distance between the argument's starting point, that Vehicle Code sections 27204 and 27207 "set[] acceptable noise limits for vehicles on all California's public roadways" and "establish[] the appropriate practices for measuring vehicle noise," and the argument's destination, that the hearing officers' decisions failed to exclude vehicle noise

9

in applying the Oakland Municipal Code. Suprema does not cite any cases in support of its argument, and nothing in the plain language of the two Vehicle Code sections cited by Suprema prohibited the City from taking vehicle noise into consideration when it declared, in 2020, that "excessive early morning noise" constituted a public nuisance and found, in 2022, that Suprema violated the compliance plan by "[failing] to comply with City of Oakland's noise ordinances during business operation," in violation of Oakland Municipal Code sections 1.08020(A)(2), 8.18.010(A), and 8.18.010(C). Again, in the absence of cogent legal argument and citation to pertinent legal authority, we deem Suprema's second argument forfeited. (See *Oyler*, *supra*, 17 Cal.5th at p. 844; *Clary*, *supra*, 11 Cal.App.5th at p. 294.)

<u>Suprema Failed to Rebut the Presumption that the Obstruction-Related Findings in 2021 and 2023 Are Supported by the Record</u>

Suprema's third argument is headed: "Both decisions commit error where they fail to evaluate the customary manner for the streets used by [Suprema]." (Capitalization omitted.) Based on Suprema's assertion about what the "evidence shows," this appears to be an argument about the sufficiency of the evidence. As we have noted, "[u]nder the substantial evidence test, the agency's findings are presumed to be supported by the administrative record and, . . . on appeal, it is petitioner/appellant's burden to show they are not." (*Donley*, *supra*, 180 Cal.App.4th at p. 456.) Furthermore, "an appellant challenging the sufficiency of the evidence has the burden to set forth all the material evidence on the point, not only facts favorable to it. [Citation.] . . . [U]nless this burden is met, we may . . . presume the record contains evidence to sustain every finding of fact. [Citation.]" (*Oakland Bulk*, *supra*, 112 Cal.App.5th at p. 544.)

10

Here, Suprema's discussion of the facts in support of its argument is about one-page long and cites only *two* pages from the record before the hearing officer in 2021. One such record cite (repeated four times) is to the *cover* page of the 48-page "enforcement report" the City prepared in connection with the underlying proceedings. Citing only this cover page, Suprema asserts that "[a]ll of the photos in the enforcement report and provided by witnesses do not show long lines of traffic, or unreasonable obstructions that are blocking the streets from all activity" and that "the evidence shows Suprema operating in the customary manner of the street: parking alongside their building, beyond the white lines indicating the lanes of travel." We decline to independently scour the record, unassisted by Suprema, in search of error; it is not our role to do an appellant's work by scouring the record on its behalf. (See *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078 ["The court is not required to make an independent, unassisted study of the record in search of error"]; *Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1149 ["Counsel is obligated to refer us to the portions of the record supporting his or her contentions on appeal. . . . And we will not scour the record on our own in search of supporting evidence"]; Cal. Rules of Court, rule 8.204(a)(1)(C) ["Each brief must: . . . (C) Support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].) Suprema's other one-page record cite is in support of an isolated assertion that a Suprema employee "spoke to a driver about driving down residential 57th street, and required him to take a different route." Even assuming the accuracy of all facts evidenced by that page, they are not sufficient to establish that the hearing officer's decision in 2021 was in error. Suprema had the burden of setting forth all evidence

11

material to its third argument and showing that the agency's findings were not supported by the record.  (See *Oakland Bulk*, *supra*, 112 Cal.App.5th at p. 544; *Donley*, *supra*, 180 Cal.App.4th at p. 456.)  Because it did not, we "must . . . presume the correctness of the [agency's] decision." (See *Fontana*, *supra*, 17 Cal.App.5th at p. 922.)

Similarly, because Suprema failed to cite any portion of the record before the hearing officer in 2023, we also presume that the hearing officer's findings were supported by the record before the hearing officer.  (See *Oakland Bulk, supra,* 112 Cal.App.5th at p. 544.)  The hearing officer's decision reflects that it considered Suprema's closing brief, which included arguments about the customary manner of use of the streets, and nonetheless found that the penalties for violations were warranted and properly assessed. Here, in the absence of any citations to the record before the hearing officer in 2023, we "must . . . presume the correctness of the [agency's] decision." (*Fontana*, *supra*, 17 Cal.App.5th at p. 922.)

## DISPOSITION

The judgment is affirmed.  The City shall recover its costs on appeal.

_____
Miller, J.

WE CONCUR:


_____
Stewart, P. J.


_____
Richman, J.




A172051, *955-57th, LLC v. City of Oakland*


13