[Civ. No. 27539. Second Dist., Div. Two. May 28, 1964.]

EVE Y. BRAUTIGAM, Plaintiff and Appellant, v. RUTH ADELE BROOKS et al., Defendants and Respondents.

Frank Renzi, Jr., and Ernest L. Graves for Plaintiff and Appellant.

Wetherbee, Stone & Davis and James H. Davis for Defendants and Respondents.

ASHBURN, J.*—Plaintiff appeals from judgment for defendants in a personal injury action wherein her automobile, while standing at a street intersection, was struck in the rear by a car driven by defendant Ruth Adele Brooks.[1]

Appellant's major contention is that the court erred prej-

[1]The Brautigam car was owned by her former husband who had loaned it to her. The Brooks car belonged to the husband, Robert Brooks, and the wife was driving it with his permission.

*Retired Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

udicially in permitting defendants to amend the answer after the evidence was closed, professedly to conform to the proof, by reasserting a plea of contributory negligence which they had withdrawn before the jury was selected. Appellant claims that there was no evidence of contributory negligence, that, if there were, it was prejudicial error to permit the amendment at the time and in the manner it was done, and that it was also reversible error to instruct the jury on that defense.

At the pretrial hearing a joint pretrial statement (which was adopted by the court) defined defendants' affirmative defense as follows:

"Defendants deny negligence and contend that plaintiff was contributorily negligent *in that she made a sudden & unsignaled stop*; defendants deny that plaintiff suffered damages as alleged in her complaint. *Contributory negligence was proximate cause.*" (The italicized words were interlined in longhand.)

At the opening of the trial and before *voir dire* examination of the jurors this contributory negligence plea was withdrawn by defendants' counsel, as witness the reporter's transcript:

"MR. GRAVES [plaintiff's attorney] : If the Court please, I understand that the defense of contributory negligence has been withdrawn in this case by the defense. Am I correct, Mr. Davis?

"MR. DAVIS [counsel for defense] : That is correct.

"THE COURT: The defense of contributory negligence is withdrawn?

"MR. DAVIS: That is correct.

"THE COURT: All right. —

"MR. GRAVES: Now, if the Court please—

"THE COURT:—Let the record so reflect in open court."

The reason for this withdrawal was later explained by defense counsel as follows:

"The Court will recall at the outset of the case that I said I did not intend to rely on that, and at that time I didn't appreciate and understand all of the evidence which has now come in, and I would be glad to explain to the Court what evidence I believe suggests contributory fault, at least sufficiently to raise a fact issue. . . . It was pleaded and then at the beginning of the case I said I didn't intend to rely on it. All the discovery and all the work in the case was done on the assumption that that would be urged. At the beginning of

the case I didn't think there was sufficient evidence of it and didn't urge it."

In his opening statement to the jury, Mr. Graves, attorney for the plaintiff, said: "I think from this evidence it's quite clear, certainly no issue she [plaintiff] has done anything wrong."

So far as appears from the record the trial proceeded without further mention of contributory negligence until plaintiff was asked on cross-examination:

"Q. By MR. DAVIS: Just prior to this accident were you in the process of moving into the left-hand lane, Mrs. Brautigam?" Whereupon the following immediately ensued:

"MR. GRAVES: Just a moment. I object to this, Your Honor, as irrelevant and immaterial. No allegation, she is blameless in this lawsuit.

"THE COURT: Wait a minute. That doesn't prevent him from going into the incidents leading up to that, which you went into properly on direct. You ask her directly what she did and where she turned and came on here and he has a right.

"MR. GRAVES: Withdraw the objection.

"THE COURT: Has nothing to do with contributory negligence.

"Overruled. You may answer.

"But I think it's proper within the area of direct examination by cross with him, and it may go to several things now that we have discussed it. It may go to her recollection or condition of her memory and her interest and everything else. A lot of things may go into besides, and proper, now that we have discussed it."

There was no further discussion about this matter until after the parties had rested and plaintiff's counsel was making a motion for directed verdict; defendants' counsel intervened with a motion to amend to conform to the proof by reasserting plaintiff's negligence:

"MR. DAVIS: Your Honor, before the Court rules on that motion, if the Court is going to, I would, wanted to make a motion to amend the defense pleadings to conform to proof.

"THE COURT: All right. What is your motion, sir?

"MR. DAVIS: My motion is to amend the Answer to include the affirmative defense of contributory negligence."
Then followed the explanation heretofore quoted together with counsel's view of the effect of the proposed amendment:

"We have thoroughly explored all the aspects of it with

the police officers and with the parties, and I believe there is a fact issue here of contributory negligence now on the question of whether or not Mrs. Brautigam was starting up and in the process of changing lanes and then stopped again before she was hit, and I believe that is a fact issue here, and I request that the Court allow me to present that issue to the jury by way of an instruction. . . . I believe now all the evidence is in that there is sufficient evidence to raise an issue of contributory fault.

"THE COURT: As I understand it, you want to revive your contention in the Paragraph Four of your Pre-Trial Statement as an issue of the fact that the plaintiff was negligent and that negligence proximately contributed to the happening of this accident.

"MR. DAVIS: I do, Your Honor.

"THE COURT: You want to revive that as contained in the pleaded defense and contained in the Trial Order, Pre-Trial Order.

"MR. DAVIS: Yes, Your Honor, I believe there has been sufficient evidence produced in the trial to raise a fact issue on the question. . . .

"The main point of physical evidence is this. After the plaintiff vehicle was hit, it didn't—and this was a Lincoln automobile, a heavy automobile—it didn't go straight forward, and the picture shows it was hit straight forward in the rear. Went sideways, went to the left immediately, which suggests to me she was in the process of changing lanes at that time to get in the proper lane to turn into this Sears parking lot here.

"Now the lady who was hit testified that she had started up before the impact occurred, and I would suggest that what she had done was start up, and then the other testimony was she was stopped. She started up into this turn and then stopped because of another vehicle that was coming in the outside lane here, Mrs. O'Grady. Mrs. O'Grady told the police officer she was moving at ten to fifteen miles an hour.

"I suggest that there was a—she started up and then stopped again while still partly in our lane and my client started up at the same time she did, and it was sort of a false start. Then when my client went to start, she hit the accelerator instead of the brake.

"THE COURT: What did the plaintiff do that you say is negligence?

"MR. DAVIS: Well, I would suggest, Your Honor, that she did two things.

"THE COURT: What did the evidence show that warrants that inference?

"MR. DAVIS: First she was changing lanes and the evidence, the Statute is one can't change lanes unless it's reasonably safe to do so. I think she was in the process of changing lanes, didn't check properly, and Mrs. O'Grady was coming up along the side and she had to stop suddenly. This is Mrs. Brautigam. That is the first thing, changing lanes.

"The second thing is that she made a false start, started up and then stopped again suddenly without giving proper signal.

"I believe that there is a fact issue on both of these questions."

In response, plaintiff's attorney said:

"I will advise the Court that I continuously objected to each bit of the evidence that he has referred to on the grounds that it was not within the issues of the case and that there was not negligence of the plaintiff been alleged and there was not a subject of an issue. Your Honor admitted it as he may show the nature of the accident. Therefore this is not evidence received without objection, and a motion to conform to proof. It is evidence received over objection as outside the issues and an attempt to change it when we were not permitted to defend on that issue. I would think it would be grossest error, but I will submit it to the Court's discretion." After further discussion the court granted the motion and said it would open the case to take further testimony if the defendant so desired.

Addressing counsel for plaintiff the court said:

"THE COURT: Are you going to offer any testimony?

"MR. GRAVES: Why, of course. I have never had an opportunity to defend against this issue before. I will start the whole case so far as liability goes again.

". . . . . . . . . . . . .

"THE COURT: But I want to sort of alert you to the fact that you are not to go, start all over on liability. You are going to meet the testimony relative to contributory negligence, and that, to that extent I have opened it up; so if you want to make error, Mister, I just wanted to tell you in advance that's what I have opened it up, not to liability, although the Graves theory may be that you have opened it up."

Later Mr. Graves said that he had been caught by surprise

and at first had thought that it would be necessary to produce complete evidence on the subject of contributory negligence, but ''[h]aving reconsidered, however, Counsel believe that to reopen the case now and to try to make this a special point would be unduly to prejudice the rest of it. Feeling therefore caught in surprise and unable to proceed to the right or to the left, Counsel would not offer any further evidence on the grounds that he believes to do so now would be to unduly and incorrectly highlight such a defense, and although he would have put on different testimony and would have put on other testimony had it been brought up and made an issue of the case, he feels that now he cannot do it.'' Both sides declined to produce further evidence.

The arguments of counsel are not included in the transcript before us. The instructions (found in the original superior court file) contain references to said issue. No. 21, upon the burden of proof, says that defendant has the burden of proof: ''First that the plaintiff was negligent in that she made a sudden and unsignaled stop and 2nd that the negligence of the plaintiff wa [sic] aproximate [sic] contributing cause of the injuries and damage she recieved [sic].''

B.A.J.I. 103.1 (revised) entitled ''Definition of Contributory Negligence'' was given. It concludes with the statement: ''One who is guilty of contributory negligence may not recover from another for the injury suffered.''

B.A.J.I. 113, defining issues to be determined, was also given. It contains this:

''If you find that plaintiff was negligent, you then must determine a fourth issue, namely:

''Did that negligence contribute as a proximate cause of the injury of which the plaintiff here complains?

''If you find that it did, your verdict must be for the defendant, ...''

The following instruction concerning the red traffic light was also given:

''You are instructed that at the time of the accident in question the Vehicle Code of the State of California in existence at the time of the accident herein, provided as follows:

'' '21453. Red or Stop. Red alone or ''stop'' on an official traffic control signal means:

'' ' (a) Vehicular traffic facing the signal shall stop at a limit line, if marked, otherwise before entering the crosswalk on the near side of the intersection or, if none, then before

entering the intersection and shall remain standing until green or "go" is shown alone, ...'"

It was followed by B.A.J.I. 149.2 to the effect that violation of a statute "constitutes negligence as a matter of law, unless, under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence."

It is settled law in this state that it is error to instruct upon the subject of contributory negligence where no such plea has been interposed and no substantial evidence has been given in support of the belated claim. (*Burks* v. *Blackman,* 52 Cal.2d 715, 719 [344 P.2d 301]; *Shippy* v. *Peninsula Rapid Transit Co.,* 197 Cal. 290, 296 [240 P. 785].) Respondent, however, relies upon cases to the effect that the absence of a formal plea is not fatal if the trial has been had upon the theory that contributory negligence was in issue or if plaintiff's own evidence showed that he was proximately negligent. There are numerous cases to this effect. See: *Hoffman* v. *Southern Pacific Co.,* 84 Cal.App. 337, 346 [258 P. 397]; *Gerfers* v. *San Diego Transit System,* 126 Cal.App.2d 733, 735, 737 [272 P.2d 930]; *Gundry* v. *Atchison T. & S.F. Ry. Co.,* 104 Cal.App. 753, 762 [286 P. 718]; *Curtis* v. *Kastner,* 220 Cal. 185, 192 [30 P.2d 26]; *Hoy* v. *Tornich,* 199 Cal. 545, 551 [250 P. 565]; *Queirolo* v. *Pacific Gas & Elec. Co.,* 114 Cal.App. 610, 614 [300 P. 487]; *Moeller* v. *Packard,* 86 Cal. App. 459, 460 [261 P. 315]; *Balasco* v. *Chick,* 84 Cal.App.2d 802, 810 [192 P.2d 76].

We have at bar a trial without any plea of contributory negligence and certainly one which was not conducted upon the theory that there was any such issue in the case. Nor does the evidence produced by plaintiff constitute any proof of her own negligence.

The accident happened on November 16, 1960, immediately south of the intersection of Orange and Wilson Streets in Glendale. Orange is a northbound one-way street having three lanes of travel. In the center lane Mrs. Brautigam's Lincoln car has stopped for the red light which was against her. Mrs. Brooks, immediately behind plaintiff, some 13 feet, had stopped her Oldsmobile and was waiting for the signal to change. Mrs. O'Grady was in a Buick in the western lane, and a little way in front (or north) of plaintiff. Before the signal changed Mrs. Brooks' foot slipped off her brake onto the accelerator, her car gave a lurch and hit plaintiff's car in

such manner as to drive it into the right rear portion of the O'Grady Buick. Mrs. Brooks' Oldsmobile, with engine roaring (according to Mrs. Hart who was in a car which had been standing immediately behind that of Mrs. Brooks) kept right on going ''until she had pushed these cars all over the street,'' stopping on the north side of Wilson Street.

First, as to the claim that plaintiff's negligence consisted of making a sudden and unsignaled stop (the defense defined in the pretrial order) there is no evidence whatever that any such thing happened. No one saw her make a stop, sudden or otherwise, with or without making a signal. There is no basis for this claim except speculation on the part of defendants' counsel. He suggests that plaintiff was turning from the center lane into the left lane of this one-way street and discovered Mrs. O'Grady approaching in that lane and so plaintiff stopped suddenly in order to avoid hitting the O'Grady car. This is contrary to the evidence given by the eyewitnesses and cannot create a conflict.

In *Estate of Kuttler,* 185 Cal.App.2d 189, 204 [8 Cal. Rptr. 160], we stated that an inference ''cannot be based upon mere possibility,'' citing among others, *Eramdjian* v. *Interstate Bakery Corp.,* 153 Cal.App.2d 590 [315 P.2d 19], and continued:

''The *Eramdjian case, supra,* at page 602, says: 'A legal inference cannot flow from the nonexistence of a fact; it can be drawn only from a fact actually established. (Code Civ. Proc., §§ 1958, 1960.) It is axiomatic that ''an inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.'' (18 Cal.Jur.2d 480.) Yet that is exactly what appellants are attempting to do.'

''*Reese* v. *Smith,* 9 Cal.2d 324, 328 [70 P.2d 933]: ' ''If the existence of an essential fact upon which a party relies is left in doubt or uncertainty, the party upon whom the burden rests to establish that fact should suffer, and not his adversary. (*Patterson* v. *San Francisco etc. Ry. Co.,* 147 Cal. 178 [81 P. 531].) A judgment cannot be based on guesses or conjectures. (*Puckhaber* v. *Southern Pac. Co.,* 132 Cal. 363 [64 P. 480].) And, also, 'A finding of fact must be an inference drawn from evidence rather than on a mere speculation as to probabilities without evidence. A majority of chances never can suffice alone to establish a proposition of fact, since the slightest real evidence would

outweigh all contrary probabilities.' (23 C.J. § 1750, p. 18.)" '

▮ *"Sweeney* v. *Metropolitan Life Insurance Co.,* 30 Cal.App.2d Supp. 767, 772 [92 P.2d 1043]: 'An inference is a deduction which the reason of the jury makes from the facts proved. (Code Civ. Proc., § 1958.) It is not a mere conjecture or an arbitrary *dixit* without reason and without factual support.'

▮ "What constitutes substantial evidence, as distinguished from mere possibility or speculation, is clarified in the following passage from *Estate of Teed, supra,* 112 Cal. App.2d 638, 644 [247 P.2d 54]: 'The sum total of the above definitions is that if the word "substantial" means anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable in nature, credible, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.'

▮ *"Fewel & Dawes, Inc.* v. *Pratt,* 17 Cal.2d 85, 89 [109 P.2d 650]: 'If, however, the evidence is so slight and tenuous that it does not create a real and substantial conflict the finding may be set aside. *(Ibid.)* ▮ "There must be more than a conflict of words to constitute a conflict of evidence. The contrary evidence must be of a substantial character, such as reasonably supports the judgment...." ' "

The first leg of this hypothesis which counsel has advanced cannot successfully withstand analysis with any more success.

▮ The eyewitnesses to the accident or some portion of it were plaintiff Mrs. Brautigam, defendant Mrs. Brooks, Mrs. O'Grady, Jack Lawrence and Mrs. Hart. Plaintiff testified that she was intending to cross Wilson Street on her way to the Sears Roebuck store which was somewhere to the north, that she was not moving into the left lane and that her wheels were not turned but pointing straight ahead; that, as she was starting very slowly she was struck in the rear; that the car in front of her seemed to be going up in the air and over, and "I saw people in the car, and I presumed they were children," obviously referring to the O'Grady car for that lady had two small children with her. Plaintiff said she "heard voices far away" and had "a sensation of being in the ambulance." "It's all mumble jumble."

Police Officer Alexander, having examined brushmarks

made by plaintiff's car as it was pushed toward that of Mrs. O'Grady, testified that there was no indication that plaintiff was changing lanes and "apparently due to the impact that kind of picked it up and set the rear end to the right, and when it hit the street, it left the brushmarks. It raised the rear end of it, I would say, of vehicle 2, the impact."

Mrs. Brooks told Officer Magallanes that she had stopped for the red light and the car in front of her had stopped. She said she was behind a Lincoln and her foot slipped off the brake pedal onto the accelerator and her car lunged into the Lincoln, pushing it into the Buick. Examined under section 2055, Code Civil Procedure, she said that plaintiff's car was at a standstill when it was hit and that it was straight with the road and was driven forward until it hit the Buick.

Mrs. O'Grady, driver of the Buick in the left lane, said her car was hit in the rear by the Lincoln and she was stopped at the time; her car was pushed toward the left curb; the rear end went into the air and she thought it would be overturned.

Jack Lawrence, who was sitting on a bench on the west side of Orange and just south of Wilson (position probably shown in photo exhibit 5), said he saw the Buick standing south of the intersection waiting for the light to change when suddenly a big car, a Lincoln, which was back of it hit the Buick and knocked it toward the sidewalk causing him to jump. The Lincoln had stopped in the center lane but somewhat to the south of the Buick. It veered left after it was hit by the Oldsmobile; that car came out of nowhere and hit the Lincoln which in turn hit the Buick. The O'Grady car was hit in the right rear. The Oldsmobile engine was going fast. The other cars were still at rest and the light had not changed.

Mrs. Hart had stopped her car in the center lane behind Mrs. Brooks and there were three cars ahead of her in that lane, meaning there was one in front of the Lincoln. She suddenly heard the Oldsmobile engine rushing and saw that car moving forward although the signal light had not changed. The Oldsmobile seemed to lunge forward and push into the Lincoln, "but she seemed to keep right on going and until she had pushed these cars all over the street."

Plaintiff's car, according to the same witness, was stopped in front of the Oldsmobile at the time of impact. "If I remember, the car that she hit jackknifed and threw her over into another lane and the first car [a Volkswagen] went up over the curb."

In all this there is nothing of any substantiality to support respondents' theory that Mrs. Brautigam was engaged in turning into the left lane when she was hit or that she suddenly stopped when she saw Mrs. O'Grady.

At one point plaintiff's testimony is at variance with that of other witnesses. All the other eyewitnesses said she was at a stop when the car was hit and the light had not changed. Although, at the scene of accident, she told Officer Alexander, "The signal was red at Wilson. The signal turned green and I had just begun to move when my car was struck in the rear by an unknown car and I then struck a vehicle in the west lane of traffic northbound on Orange," at the trial she said she was completely stopped at the time of the accident and had been so for 20 to 25 seconds; however, on cross-examination she testified that before the impact she had "just barely" started forward, had just touched the accelerator; she was watching the light. "[I]t must have turned green because I just started to put my foot on the accelerator. ... I barely moved the car. ... I don't think I moved a quarter of a car length," and she did think she was barely moving.

All of the other witnesses said the light was red and the Brautigam car standing still at the time of the impact.

It is to be remembered that Mrs. Brooks' testimony raised a presumption of negligence against her (*Ponce* v. *Black*, 224 Cal.App.2d 159, 162-163 [36 Cal.Rptr. 419]; *Pacific Greyhound Lines* v. *Querner*, 187 Cal.App.2d 190, 192-3 [9 Cal. Rptr. 370]; *Persike* v. *Gray*, 215 Cal.App.2d 816, 820 [30 Cal.Rptr. 603]; *Alarid* v. *Vanier*, 50 Cal.2d 617, 621, 624 [327 P.2d 897]) which must be met by other evidence in order to preclude a verdict for plaintiff.

Let it be assumed that Mrs. Brautigam did start her car in contravention of the literal language of section 21453, subdivision (a), Vehicle Code: "Vehicular traffic facing the signal shall stop at a limit line, if marked, otherwise before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection and shall remain standing until green or 'go' is shown alone, except as provided in the next succeeding paragraphs." That would not be enough, standing alone, to establish contributory negligence for proximate cause is one of the elements of that defense. The evidence does not show, directly or by reasonable *inference*, that Mrs. Brooks' conduct was influenced in any slight degree by Mrs. Brautigam starting her car, if she

did start. Negligence of plaintiff which does not enter into causing the accident, which is not a proximate cause, is not contributory negligence in the eyes of the law. (See: *Zaferis* v. *Bradley,* 28 Cal.App.2d 188, 190-192[3] [82 P.2d 70]; *McWane* v. *Hetherton,* 51 Cal.App.2d 508, 511 [125 P.2d 85]; *Reeves* v. *Lapinta,* 25 Cal.App.2d 680, 682 [78 P.2d 465]; *Petersen* v. *Lewis,* 2 Cal.2d 569, 572 [42 P.2d 311]; *Wohlenberg* v. *Malcewicz,* 56 Cal.App.2d 508, 512 [133 P.2d 12]; *Mahnkey* v. *Bolger,* 98 Cal.App.2d 628, 632 [220 P.2d 824].)

 The granting of leave to amend to conform to proof is manifestly erroneous when the record shows, as here, that no conformity results due to the absence of the claimed evidence.

 The ruling was also grievously erroneous in this instance because it definitely prejudiced plaintiff in presenting her cause. The defense of contributory negligence was withdrawn before the jury was selected; during the presenting of evidence there was no suggestion that there was such an issue in the case; necessarily the conduct of all parties involved in an automobile accident is canvassed in order to determine the charge of negligence against the defendant; receiving such evidence is confined to the charge against the defendant when his countercharge of neglect on plaintiff's part has been specifically withdrawn. When at the close of the trial defendants' attorney moved to amend upon the ground that the evidence in the record established contributory negligence, notwithstanding his own previously expressed opinion, Mr. Graves asserted surprise, a normal reaction, and claimed the right to produce evidence if the motion was granted. The judge then advised him he could not canvass the question of negligence at large but must confine his new evidence to that of negligence of plaintiff; counsel reasoned (and we think soundly) that such a procedure would unduly emphasize the question of contributory negligence which had not been in the case and should not be injected into it at such a late hour.

Who can say that plaintiff's counsel, had he known he would be confronted with the claim of contributory negligence, would not have handled his examination of witnesses and general conduct of the case differently? Certainly we cannot do so.

Defendants' last-minute recantation of their previous definition of issues reminds us of our remarks in *Garrick* v. *J.M.P.,*

*Inc.,* 150 Cal.App.2d 232, 240 [309 P.2d 896]: "Defendant's motion for leave to amend to conform to the proof by alleging a joint venture and a resulting loss was properly denied. Defendant Pruitt had previously testified factually and by way of conclusion that there was no joint venture, and hence defendants cannot complain of a denial of their motion to amend. They cannot blow hot and cold in this manner. 'These two positions are entirely inconsistent. The court will not recognize or tolerate such tactics. A party cannot thus "blow hot and cold." *(McDanels* v. *General Ins. Co.,* 1 Cal.App.2d 454, 459 [35 P.2d 394, 36 P.2d 829]; *Chaquette* v. *Ortet,* 60 Cal. 594, 600.) The courts would be impotent indeed if they were compelled to approve such duplicity.' *(Alexander* v. *Hammarberg,* 103 Cal.App.2d 872, 879 [230 P.2d·399].)"

"... it is quite generally held that, where the evidence offered has been promptly objected to on the ground that such evidence does not tend to support the allegations of the pleadings, a motion to amend after admission of the evidence so as to conform to proof should not be granted; and where under such circumstances it is granted it is generally held that such amendment cannot cure the error in admission of the evidence, and that it is an abuse of discretion and may constitute error, ..." (71 C.J.S. § 285, p. 619.) To the same effect, see *Winberry* v. *Lopez,* 178 Cal.App.2d 672, 679 [3 Cal.Rptr. 245]; *Nelson* v. *Angel,* 124 Cal.App.2d 861, 866 [269 P.2d 626]; *Lavely* v. *Nonemaker,* 212 Cal. 380, 385 [298 P. 976]; *Weinberg* v. *Dayton Storage Co.,* 50 Cal.App.2d 750, 759 [124 P.2d 155]; *Richter* v. *Adams,* 19 Cal.App.2d 572, 576 [66 P.2d 226]; *Bank of United States* v. *Foreman,* 102 Cal.App. 756, 764 [283 P. 874]; *Bowman* v. *Wohlke,* 166 Cal. 121, 128-129 [135 P.37, Am. Cas. 1915B 1011].

■ "A commonly recognized limitation on the propriety of amendments to conform to the proof is that they must not introduce a new cause of action or introduce a new issue, or substantially change the claim or defense, ..." (71 C.J.S. § 285, pp. 613-614.)

■ Finally, the court charged the jury in instruction No. 21 that the defendant had the burden of proof that plaintiff was negligent in that she made a sudden and unsignaled stop and that "the negligence" of plaintiff was a contributing cause, which language left a plain inference that a sudden or unsignaled stop spells negligence without more. But this instruction loses sight of the qualifying phrase of section 22109, Vehicle Code, which reads: "No person shall

stop or suddenly decrease the speed of a vehicle on a highway without first giving an appropriate signal in the manner provided in this chapter to the driver of any vehicle immediately to the rear when there is opportunity to give the signal.''

The concluding words convert any alleged violation of this section into a question of fact. In effect the court told the jury that a sudden stop by plaintiff without first giving a signal would be negligence as a matter of law and, of course, that is erroneous. If perchance Mrs. Brautigam did see Mrs. O'Grady approaching in the left lane just as she started to turn into it the probability would be that she would have to make an immediate stop and would not have opportunity to give any signal. It presents a question of fact, not one of law. It was well said in *Malone* v. *Perryman,* 226 Cal.App.2d 227, 235 [37 Cal.Rptr. 864] : ''Although the conduct required of a reasonably prudent person may be prescribed by statute [citation], a seeming noncompliance therewith is not negligence if the situation out of which it arises is not one contemplated by the statute.''

 Definitely there has been a miscarriage of justice here and the judgment should be reversed in part. Plaintiff's motion for directed verdict upon the issue of liability was denied; it should have been granted; the evidence is in such shape that the issue of liability should be considered as settled and the matter of damages alone left open on a new trial.

The judgment is reversed for further proceedings not inconsistent with the views herein expressed and the cause remanded for a new trial upon the sole issue of amount of damages, if any, suffered by plaintiff.

Fox, P. J., and Roth, J., concurred.