Filed 9/24/20  Rogers v. Wells Fargo Bank, N.A. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LAURA J. ROGERS, <br><br> Plaintiff and Appellant, <br> v. <br><br> WELLS FARGO BANK, N.A. et al., <br><br> Defendants and Respondents. | A156555 <br><br> (Contra Costa County Sup. Ct. No. MSC1702224) |

Plaintiff Laura J. Rogers (Rogers) appeals from the trial court's judgment dismissing her action against defendants Wells Fargo Bank, N.A. (Wells Fargo), Northwest Trustee Services, Inc., and HSBC Bank U.S.A., N.A.'s (HSBC) after the court sustained defendants' demurrer to her second amended complaint without leave to amend.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Because this is an appeal from an order sustaining a demurrer, we set forth as true the following facts as they are alleged in the second amended complaint, together with properly judicially noticed facts.  (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672.)  In April 2007, Rogers obtained a $1,982,500 loan (the Loan) to purchase a real property located in Walnut

1

Creek, California (the Property).[1]  Shortly after the loan origination, Wells Fargo began servicing the Loan and HSBC became the beneficiary of the Loan by an assignment of the deed of trust.

After Rogers failed to make her August 1, 2009 Loan payment, she contacted Wells Fargo to seek a loan modification.  She submitted numerous documents to Wells Fargo with the understanding that Wells Fargo would consider modifying the Loan.  "Finally, in January of 2011, Wells Fargo sent [her] a 'Special Forbearance Agreement' " that provided that Wells Fargo would review Rogers for a loan modification after she successfully made three monthly payments.  Rogers made the three payments and thereafter submitted additional documents that Wells Fargo told her were necessary in evaluating her loan modification application.  During that time, Rogers continued to make monthly payments on her Loan as required by the forbearance agreement until she stopped making payments in August 2012.

For the next four years, Rogers continued to submit documents to Wells Fargo for her loan modification application.  "Finally, in or around July 2016," Wells Fargo informed Rogers that her application was denied because the investor of her loan, HSBC, did not allow for loan modifications.  Rogers was "incensed that she had gone through the modification process for years when Wells Fargo knew all along that she could never receive a modification because the investor of the loan did not modify loans[.]"  Wells Fargo informed Rogers she had three options at that point:  (1) foreclosure; (2) short

---

[1]     Rogers explained in her original complaint, which she later amended, that the loan application was known as a " 'quick qualifier,' meaning only bank statements showing a significant balance were used for qualification and then approval."  Rogers was unemployed and had no source of income at the time she obtained the Loan.  Her monthly payment on the Loan was over $13,000.

sale; or (3) executing a deed in lieu of foreclosure.  Rogers chose the short sale option and began searching for a buyer.

Shortly thereafter, Wells Fargo conditionally approved a short sale at a sales price of $1.4 million and a closing date of January 27, 2017.  Rogers received a $1.4 million offer but, "because of the condition of the property[,] escrow took longer than expected."  Rogers therefore requested, and Wells Fargo granted, an extension of time of about three months to close.  However, on the day before the extension was about to expire, Wells Fargo informed Rogers that it was " 'unable to wait any longer on this file' " and needed to move forward with the foreclosure process.  The short sale purchase failed to close.

Rogers filed an internal complaint with Wells Fargo challenging its "abrupt" decision to end the time extension.  In response, Wells Fargo offered Rogers another opportunity to apply for a loan modification.  During the next few months, Rogers submitted documents in support of a loan modification but Wells Fargo denied her application on the basis that her income was insufficient.  Rogers informed Wells Fargo that her spouse, from whom she was separated, could contribute towards the monthly mortgage payment.  On November 2, 2017, Rogers submitted additional documents relating to her spouse's contributions.  The next day, Wells Fargo informed Rogers that the spousal contribution was insufficient and that it would go forward with the foreclosure sale the following Monday, November 6.

On November 6, Rogers' "authorized agent" attended the foreclosure auction with the intent to bid on the Property.  In her original complaint, Rogers alleged it was her spouse who attended the foreclosure auction.  In her subsequent complaints, she alleged it was her agent—an individual named David Nace (Nace) who "worked for [Rogers] in various capacities

3

since 2010"—who attended the foreclosure auction.  In her second amended complaint, which is the operative complaint, Rogers alleged she and Nace had a "verbal arrangement" that a limited liability corporation (LLC) of which Nace was a member would bid on the Property on behalf of Rogers, up to $1.4 million.  At the November 6 foreclosure auction, it was announced that the foreclosure sale of the Property had been postponed to the following month and, therefore, Nace did not bid on the Property.  Two days later, on November 8, Rogers learned during a telephone call with Wells Fargo that the Property actually had been sold at the November 6 foreclosure sale to HSBC.

Nine days later, on November 15, Rogers, in pro per, filed a verified complaint against Wells Fargo alleging 16 causes of action.  The trial court sustained Wells Fargo's demurrer to the complaint with leave to amend and Rogers then retained an attorney who filed on her behalf a first amended complaint against Wells Fargo, HSBC, and Northwest Trustee Services, Inc., the foreclosing trustee of the Loan (together, defendants).  She alleged six causes of action:  (1) wrongful foreclosure; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) violation of Civil Code section 2923.6; (5) violation of Civil Code section 2923.7; and (6) quiet title.  She alleged she was harmed because defendants prematurely conducted a foreclosure sale, made false statements about postponing the foreclosure auction, did not sell the Property to the highest bidder at a public auction, and gave her unreasonable time frames to submit documents for loan modification review.

Defendants demurred to the first amended complaint arguing, among other things, that Rogers had failed to show harm.  After defaulting on her loan in August 2009, Rogers lived in the Property "for free for more than eight years" and failed to cure her default.  By the time defendants "were

4

finally able to foreclose on the Property on November 6, 2017," the Property "sold for $1.08 million as against a debt of $3.348 million." "Therefore, Plaintiff lost nothing when, as a result of the foreclosure sale, title in the property was transferred to the purchaser. To the contrary, Plaintiff benefited from the sale because . . . her $3.3 million debt was extinguished." Defendants also argued Rogers' quiet title claim failed because Rogers did not allege she has "tendered any part of her debt" in violation of the tender rule, i.e., that a "mortgagor may not maintain a quiet title action against the mortgagee without first paying the outstanding debt on which the subject mortgage is based."

The trial court sustained the demurrer to Rogers' first amended complaint with leave to amend, stating: "The primary defect in plaintiff's allegations is the failure to plead an intelligible theory of causation." The court noted that the willingness of both parties to allow a short sale "strongly indicates that there was no equity in the [P]roperty." Further, even a $1.4 million short sale offer was not viable " 'because of the condition of the [P]roperty.' " In addition, there were judicially noticed documents—the accuracy of which Rogers did not dispute—that showed the Loan balance was approximately $3.3 million as of the date of the trustee's sale and that the Property sold for a credit bid of approximately $1.1 million. The court ordered Rogers to "clarify" the allegations regarding equity and affirmatively allege the fair market value and the balance on her Loan at the time of the trustee's sale.

The trial court also stated it "does not understand" the allegations relating to the " 'authorized agent' " who attended the November 6 foreclosure auction. "[P]laintiff shall allege whether the agent would be bidding with plaintiff's money or with the agent's own money, the source of the money,"

5

and "whether the agent showed up on November 6 with the certified funds necessary to effectuate a bid, as is required at a nonjudicial foreclosure sale." The court asked, "if the agent had purchased the property through a successful bid, what then?  Would the agent have just deeded the property over to plaintiff for free?"

The trial court found that Wells Fargo gave Rogers many opportunities over the course of many years including entering into a forbearance agreement, refraining from initiating foreclosure for more than four years thereafter, "not rush[ing] to conduct a trustee's sale" after "finally record[ing] a notice of default," giving Rogers the opportunity to conduct a short sale, granting her a three-month extension to close escrow, and considering her loan modification application, including agreeing to "take into consideration the possibility of an additional (and highly implausible) voluntary contribution from plaintiff's estranged spouse."  "In light of the lengthy period of default, plaintiff's multiple failed attempts to address her default, and defendants' full consideration and denial of plaintiff's latest application for a loan modification, plaintiff has failed to allege facts indicating that any technical defect in the foreclosure process caused plaintiff harm.  Rather, the sole cause of plaintiff's harm appears to have been her inability to pay her mortgage loan on the terms she had originally agreed to."  As to the quiet title cause of action, the court stated Rogers had failed to allege tender.  The court went through each cause of action and set forth "Conditions on Leave to Amend" including instructions on how to cure the defects in her first amended complaint.  The court, for example, instructed Rogers to allege facts to show Nace went to the foreclosure auction with certified funds necessary to bid on the Property as required by law.

6

Rogers filed a second amended complaint (SAC) alleging the same six causes of action. She provided additional information regarding Nace, including stating that his LLC had $1.4 million "readily available" to bid on the Property and that the plan was for the LLC to purchase the Property, then transfer title back to Rogers and "secure a loan on the property payable by [Rogers] for the purchase price." Rogers alleged the fair market value of the Property was $2.7 million in September 2017 and attached a copy of an appraisal to the SAC. She alleged, "Since Plaintiff could have retained title to the Property for $1,400,000.00 had Defendants held the property for sale at a public auction as required, Plaintiff seeks damages from Defendants for $1,300,000.00, which is the difference between the value that Plaintiff could have purchased the property for at auction and the appraisal of the property that they obtained in September 2017."

Defendants filed a demurrer to the SAC arguing Rogers still did not plead facts supporting causation, given that she failed to take into account the fact that the foreclosure sale extinguished her $3.3 million debt. Defendants asserted they did not misrepresent the November 6 foreclosure auction date and that, even assuming they did, Rogers failed to allege a material fact—that Nace went to the auction with the certified funds necessary to bid on the Property. Defendants asked the trial court to take judicial notice of governmental records showing that Nace's LLC was an out-of-state "vehicle ownership" business, that Nace was a real estate salesperson whose license had been revoked, and that Nace had filed for bankruptcy three times, including on November 3, 2017—the business day before the November 6 foreclosure sale—and that his assets were worth less than

7

$50,000 as of that date.[2]  Defendants asserted Rogers also failed to plead facts showing a material violation in connection with the loan modification or foreclosure process and had still not complied with the tender rule.

Before the trial court issued its ruling, Rogers filed an "amendment" to the SAC in which she added several allegations, including a footnote explaining the discrepancy between her original complaint—in which she alleged her spouse attended the November 6 foreclosure sale—and her subsequent complaints in which she alleged Nace did.  She explained she made a "mistake of fact" because her spouse attended an auction after the November 6 sale "to attempt to discover the name of the auctioneer at the November 6 . . . sale.  Because Plaintiff did not attend any of the sales herself and she had not been at the sale on November 6, 2017, she was confused as to who attended which sale."  In her "amendment," she also alleged the Loan balance was likely less than the $3.3 million that defendants' documents showed because "there is a possibility that the interest added onto the total balance was miscalculated" or that "some of the fees added onto the total balance may have been overstated."  Rogers, however, acknowledged: "[B]ecause Plaintiff is not an expert, Plaintiff would be purely speculating as to what the total amount owed on the loan was at the time of the sale."

The trial court sustained defendants' demurrer to the SAC without leave to amend as the SAC still failed to allege facts supporting causation. The court found Rogers violated the sham pleading doctrine by changing her original allegation that her spouse attended the auction to an allegation that Nace attended the auction.  The court found it was "utterly implausible" that

---

[2]     It appears Rogers did not oppose—and the trial court granted—defendants' request for judicial notice of various documents, including documents relating to Nace and the LLC.

8

Rogers was confused about who attended the sale when she filed her original complaint only nine days after the November 6 foreclosure sale. If Rogers had an agreement with Nace that his LLC was going to purchase the Property for $1.4 million, "how could [she] have possibly thought that her husband was going to appear at the trustee's sale and purchase plaintiff's residence. . .?" "It is apparent that plaintiff has changed the facts she is alleging to fit a continually evolving legal theory, presumably because her attorney advised her" that her original theory that an estranged husband was going to buy the Property for her "would [not] fly. This is not acceptable." The court further found that Wells Fargo properly considered and denied Rogers' last application for a loan modification before the sale and that Rogers failed to allege any material violation of any loan modification or foreclosure statute. Finally, the court reiterated that Rogers' failure to allege a tender of the underlying debt barred her quiet title claim. On December 19, 2018, the court entered a judgment of dismissal with prejudice against Rogers and in favor of defendants. Rogers appeals.

## DISCUSSION

"In our de novo review of an order sustaining a demurrer, we assume the truth of all facts properly pleaded in the complaint or reasonably inferred from the pleading, but not mere contentions, deductions, or conclusions of law. [Citation.] We then determine if those facts are sufficient, as a matter of law, to state a cause of action under any legal theory." (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052.) To prevail on appeal from an order sustaining a demurrer, "the appellant must affirmatively demonstrate error. Specifically, the appellant must show that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the

9

demurrer. [Citation.] We will affirm the ruling if there is any ground on which the demurrer could have been properly sustained." (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 752.)

"When a demurrer is sustained without leave to amend, this court decides whether a reasonable possibility exists that amendment may cure the defect; if it can we reverse, but if not we affirm. The plaintiff bears the burden of proving there is a reasonable possibility of amendment. [Citation.] The plaintiff may make this showing for the first time on appeal. [Citations.] [¶] To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] . . . [Citation.] The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44.) The burden of showing that a reasonable possibility exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. [Citation.] Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend." (*Id.* at p. 44.)

Rogers' primary contention is that the judgment must be reversed because the attorney who prepared her first and second amended complaints was incompetent. Rogers emphasizes that there is a "long-standing public

10

policy" "to have every case tried on its merits wherever possible" and argues that her attorney deprived her of this opportunity by failing to comply with the trial court's orders relating to what additional allegations she needed to include to cure the defects in her first amended complaint. Rogers argues her attorney not only "failed to incorporate the information requested by the Court," but also "compounded her mistakes" by not personally appearing at the hearing and instead "phon[ing] in her appearance," which precluded counsel from demonstrating to the trial judge that "she was earnestly working to do right by her Client." Rogers argues that her attorney's "lack of experience in real estate and foreclosure matters" is apparent, as she alleged facts in the second amended complaint that directly contradicted the allegations in the first amended complaint.

Rogers cites no relevant authority to support her position that an attorney's incompetence in a civil case can lead to reversal. While "[t]he right to effective counsel in a criminal case is well established," "we are aware of no authority . . . which would permit a trial or appellate court to grant a retrial to an unsuccessful litigant in a civil case . . . on the grounds of incompetency of counsel." (*Chevalier v. Dubin* (1980) 104 Cal.App.3d 975, 978.) Moreover, we note that other than making the conclusory statement that counsel was incompetent, Rogers has failed to state what additional allegations counsel could have made in order to comply with the trial court's instructions on amending—and curing the defects of—her first amended complaint. As noted, an appellant has both the burden of affirmatively demonstrating error (*Scott v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at p. 752) and the burden of showing with specificity how the complaint can be amended to state a valid cause of action (*Rakestraw v. California Physicians' Service*, *supra*, 81 Cal.App.4th at pp. 43-44). Rogers has done neither.

11

Rogers also makes a cursory argument consisting of a few short paragraphs, with no citation to the record or to any authority, that Wells Fargo failed to "negotiate with [her] in good faith." She asserts that Wells Fargo employed a "delay and stall" tactic whereby it required her to "produce reams of paperwork and be placed on a three-month payment plan to see if [she] was creditworthy." She states that under this payment plan, Wells Fargo agreed to "take [the Loan] out of collection and refinance the property" if Rogers was able to make two monthly payments of $10,291.28 and a payment of $419,828.80 in the third month. Wells Fargo agreed to this knowing Rogers "could not make the third monthly payment" so that it could "proceed with the foreclosure."

This argument fails for several reasons. First, we generally do not consider arguments made for the first time on appeal. (*Dowling v. Farmers Ins. Exch.* (2012) 208 Cal.App.4th 685, 696.) Second, "[w]e may disregard a [party's] statements of fact when those statements are unsupported by citations to the record. [Citation.] And we will not scour the record on our own in search of supporting evidence." (*Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1149.) Third, we will treat as forfeited any issue that is not supported by identifiable legal argument or proper citation of authority. (*Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574, 600; *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655.) Here, Rogers mentions this payment plan and refinance agreement for the first time on appeal. She has not cited to anything in the record to support her factual assertions. She has also failed to set forth any legal argument or explanation as to how this alleged tactic or agreement violated any law, or how any of these allegations supports any of her causes of action. We therefore disregard these new allegations and treat this argument as forfeited.

12

In sum, Rogers has failed to advance any meritorious argument to show the trial court erred and has also failed to show she can amend her complaint to state a valid cause of action. Accordingly, we affirm the court's judgment dismissing her action with prejudice.

## DISPOSITION

The trial court's December 19, 2018, judgment of dismissal with prejudice in favor of defendants and against Rogers is affirmed. Defendants shall recover their costs on appeal.

_____

Petrou, J.


WE CONCUR:


_____

Siggins, P.J.


_____

Jackson, J.


*Rogers v. Wells Fargo Bank, N.A. et al./A156555*


14